# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

| | |
|---|---|
| **KENNY DREW SAYRE,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>)<br>**THOMAS McBRIDE, Warden,** )<br>**Mount Olive Correctional Complex,** )<br>)<br>**Defendant.** ) | **Civil Action Nos. 5:05-0016**<br>**and 5:05-0131 (consolidated)** |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending is Defendant's Motion for Summary Judgment in these consolidated cases. (Document No. 22 in Civil Action No. 5:05-0016.) The Court advised Plaintiff of his right to file a response to the State Defendants' Motions for Summary Judgment pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Document No. 24.) Plaintiff filed Objections to Defendant's Motion for Summary Judgment (Document No. 25.), and a Supplement to his Objections (Document No. 26.).[1] Having considered the entire record in these cases, the undersigned concludes and respectfully recommends that Defendant's Motion for Summary Judgment should be **GRANTED** and these cases should be **DISMISSED**.

## PROCEDURAL AND FACTUAL BACKGROUND

On January 7, 2005, Plaintiff filed a Complaint alleging that he developed a tooth ache in late November, 2004, made five requests through December, 2004, to see a dentist and did not

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

receive medical care. Thus, Plaintiff initiated Civil Action No. 5:05-0016. Plaintiff states that this "is proof this Plaintiff was and is being denied the proper medical care by Warden Thomas McBride, who is responsible for my health, safety and welfare, as I am in the custody of Warden Thomas McBride." Plaintiff therefore alleges that his Eighth Amendment rights were violated and requests monetary relief. Plaintiff attaches copies of Inmate Medical Services Request forms to his Complaint indicating that he requested to see a dentist for a tooth ache on October 30, November 8 and 18, and December 23 and 24, 2004. He also attached a copy of a G-2 Grievance Form indicating that on December 8, 2004, he complained that "medical is denying me from seeing a dentist as I am having pain from a toothache." Plaintiff claims that he did not receive a response to his complaint. Plaintiff also filed an Application to Proceed *in Forma Pauperis*. (Document No. 2.)

On February 16, 2005, Plaintiff filed a further Complaint alleging that he was required to reside in a cell with a mentally ill prisoner who was unclean, suffered from sleep deprivation and talked continuously about killing people and his former attorneys in violation of his Eighth Amendment rights. Plaintiff requests monetary relief. Thus, Plaintiff initiated Civil Action No. 5:05-0131. Plaintiff indicates that he filed a grievance "on notebook paper" and "the office of the Warden never gave any response." Plaintiff attaches a copy of a "Grievance by Inmate Kenny Drew Sayre" addressed to Warden McBride complaining of "a serious problem as my cellmate . . . is seriously mentally ill . . .." Plaintiff filed an Application to Proceed *in Forma Pauperis* with his Complaint. (Document No. 2.)

By Order filed on March 21, 2005, the undersigned, having been referred these cases by Standing Order of the District Court, consolidated them as the two cases concern Plaintiff's allegations under 42 U.S.C. § 1983 of violations of his Eighth Amendment rights. The undersigned

also found Plaintiff's Applications to Proceed *in Forma Pauperis* deficient and required him to rectify the deficiency. (Document No. 6 in 5:05-0016 and Document No. 7 in 5:05-0131.) Plaintiff submitted another Application to Proceed *in Forma Pauperis* on March 25, 2005. (Document No. 7 in 5:05-0016.) The Court granted his Application and ordered the issuance of Summonses. (Document No. 11 in 5:05-0016.)[2] Defendant filed an Answer denying Plaintiff's claims and

---

[2] The undersigned notes that Plaintiff has been a frequent litigator in this Court having initiated nine other actions in this District since August, 1999. The cases are as follows:

1. Sayre v. Painter, Case No. 5:99-0748 (S.D.W.Va. Dec. 30, 1999)(Chambers, J.); dismissed with prejudice for failure to state a claim under § 1983.
2. Sayre v. State of West Virginia, Case No. 2:99-0938 (S.D.W.Va. July 17, 2000) (Copenhaver, J.); dismissed without prejudice because the complaint was construed as a petition for a writ of mandamus to require the West Virginia Supreme Court of Appeals to reinstate Plaintiff's appeal rights.
3. Sayre v. Painter, Case No. 5:00-0088 (S.D.W.Va. Sept. 17, 2001)(Chambers, J.); Plaintiff alleged that prison medical providers were seriously indifferent to his serious medical needs in violation of the Eighth Amendment; dismissed with prejudice for failure to make a sufficient showing of an Eighth Amendment violation.
4. Sayre v. Painter, Case No. 5:00-0099 (S.D.W.Va. Mar. 30, 2000)(Haden, C.J.); Plaintiff alleged double-celling with mentally ill inmates; dismissed with prejudice for failure to state a claim and as frivolous as a matter of law; appeal dismissed by Plaintiff/Appellant, Case No. 00-6483 (4th Cir., Apr. 27, 2000).
5. Sayre v. Mount Olive Correctional Complex, Case No. 5:01-0434 (S.D.W.Va. Oct. 17, 2001)(Faber, J.); Plaintiff alleged that mentally ill inmates were being double-celled, and that staff was promoting homosexual acts by the double-celling; dismissed with prejudice for failure to exhaust administrative remedies and for being the third action dismissed as frivolous, malicious or for failure to state a claim.
6. Sayre v. Perry, Case No. 2:02-0129 (S.D.W.Va. Mar. 29, 2002)(Goodwin, J.); dismissed with prejudice pursuant to the provisions of 28 U.S.C. § 1915(g).
7. Sayre v. Perry, Case No. 2:02-1044 (S.D.W.Va. Oct. 7, 2003)(Haden, C.J.); dismissed with prejudice pursuant to the provisions of 28 U.S.C. § 1915(g).
8. Sayre v. McBride, Case No. 5:03-2023 (S.D.W.Va.)(filed July 30, 2003)(Haden, J.); Magistrate Judge Mary Stanley entered Proposed Findings and Recommendation that the District Court dismiss Plaintiff's complaint, docketed as being filed pursuant to 28 U.S.C. § 2254, for failure to state a cognizable claim for federal *habeas* review and as moot; dismissed with prejudice.
9. Sayre v. State of West Virginia, Case No. 5-03-2025 (S.D.W.Va.)(also filed July 30, 2003)(Chamber, J.); Plaintiff alleged that the Clerk of the West Virginia Supreme

asserting numerous defenses on July 21, 2005. (Document No. 14 in Civil Action No. 5:05-0016.) Defendant also filed a Motion for Leave to Take Plaintiff's Deposition. (Document No. 15.) The Court granted Defendant's Motion by Order filed on July 17, 2005 (Document No. 17.), and Plaintiff filed Objections (Document No. 19.). Defendant took Plaintiff's deposition on August 12, 2005. (Document No. 20 and Document No. 23 (Defendant's Memorandum in Support of his Motion for Summary Judgment), Exhibit 1 a copy of the deposition transcript).)

Plaintiff filed further documents as follows in each case. On April 8, 2005, Plaintiff filed a Supplement in Support of Complaint in Civil Action No. 5:05-0016, alleging that he has serious medical problems and is not receiving proper medical care. Plaintiff states that many inmates have died because "the Warden and his staff don't care who lives or dies because they don't want to spend the money for the proper medical care . . .." (Document No. 9.) By letter filed on May 20, 2005, Plaintiff wrote that the West Virginia Department of Corrections [DOC] was denying him access to the Courts because library staff at Mount Olive Correctional Complex [MOCC] was refusing to make copies of documents which he intended to send to the Court. (Document No. 10.)

On March 1, 2005, Plaintiff filed a Brief in Support of Complaint in Civil Action No. 5:05-0131, further asserting violation of his Eighth Amendment right to safety in his imprisonment with "an extremely mentally ill prisoner." (Document No. 5.) On March 8, 2005, Plaintiff filed a Supplement in Support of Complaint alleging that on March 4, 2005, the water in the pod where his cell is located was shut off which exacerbated the problems which Plaintiff has with his cell mate

---

Court of Appeals refused to assign a case number to Plaintiff's Petition for Writ of Habeas Corpus filed therein, and thereby denied him his constitutional right of access to the Courts; dismissed as moot.

because his cell mate "is unclean even with the water on." (Document No. 6.) On April 6, 2005, Plaintiff filed his Second Supplemental Brief in Support of Complaint complaining that the water to his cell was again shut off on April 3, 2005, as it had been about eighteen times before over the five preceding years. Plaintiff complains that he has not been provided "proper drinking water and a shower for days at certain dates over the last 5 years" and that being housed with a mentally ill person is affecting his own mental health. (Document No. 8.) On June 2, 2005, Plaintiff filed a Third Supplement in Support of Complaint alleging that the prison librarian has refused to provide him copies of legal documents and the prison post office did not deliver a book of rules sent to him by the United States Supreme Court, and therefore, he is being denied access to the Courts. (Document No. 9.) Plaintiff attaches a handwritten Grievance by Inmate Kenny D. Sayre to Warden, Thomas McBride, MOCC, on Law Library at MOCC, Mt. Olive, W.Va., indicating that he complained about the circumstances but received no response. On June 2, 2005, Plaintiff sent a further document to the Court reiterating that he was being denied access to the Courts. (Document No. 10.)

Defendant filed a Motion for Summary Judgment and Memorandum in Support on September 1, 2005. (Document Nos. 22 and 23 in Civil Action No. 5:05-0016.) Defendant asserts that he is entitled to summary judgment because (1) Plaintiff failed to exhaust administrative remedies; (2) Defendant is entitled to qualified immunity; and (3) Defendant cannot be deemed liable based upon the doctrine of *respondeat superior* in this § 1983 case. (Document No. 23, pp. 6 - 14.)

Plaintiff filed Objections to Defendant's Motion for Summary Judgment on September 7, 2005 (Document No. 25.), and a Supplement to his Objections on September 13, 2005 (Document No. 26.). In his initial Objections, Plaintiff restates the claims which he raised in his Complaint and

the other documents which he has filed in Civil Action No. 5:05-0016 specifying all of his medical problems. In his Supplement (Document No. 26.), Plaintiff mentions evidence which indicates that his cell mate had a history of mental illness and restates the claims which he raised in his Complaint in Civil Action No. 5:05-0131. Plaintiff does not address the issues raised by Defendant in seeking summary judgment.

## THE APPLICABLE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322 - 23, 106 S.Ct. at 2552 - 53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**DISCUSSION**

The Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions under 42 U.S.C. § 1983 "or any other Federal law," though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] See Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.). The PLRA exhaustion requirement applies with equal force to § 1983 and Bivens actions. See Yousef v. Reno, 254 F.3d 1214, 1218 (10th Cir. 2001)(PLRA's exhaustion requirement applies to Bivens claims); Nyhuis v. Reno, 204 F.3d 65, 68-69 (3d Cir. 2000)(1997e(a) applies equally to § 1983 and Bivens actions).

In Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 678 (4th Cir. 2005), the Fourth Circuit held that administrative exhaustion is not a jurisdictional requirement. The Court stated:

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

> Section 1997e(c)(2) clearly contemplates the dismissal on the merits of some claims that have not been exhausted. Because a district court must have subject-matter jurisdiction before it can dismiss a claim on the merits, failure to exhaust cannot be viewed as affecting the district court's subject-matter jurisdiction over the claim. See *Chellette*, 229 F.3d at 687 ("Because the existence of jurisdiction is a prerequisite to the evaluation and dismissal of a claim on its merits, it follows that jurisdiction is not divested by the failure to exhaust administrative remedies."); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998)(per curiam)("The statute provides that the court may dismiss such claims without requiring the exhaustion of administrative remedies. The court would not be empowered to do so if the exhaustion provision deprived the court of jurisdiction over the action." (citation omitted)). We therefore conclude that the PLRA's exhaustion-of-remedies requirement does not operate as a bar to the district court's exercise of its subject-matter jurisdiction.

Id. at 678; See also, Perez v. Wisconsin Dept. of Corr., 182 F.3d 532, 536-37 (7th Cir. 1999); Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999); Wright v. Morris, 111 F.3d 414, 421(6th Cir.), cert. denied, 522 U.S. 906, 118 S.Ct. 263,139 L.Ed.2d 190 (1997); Nyhuis v. Reno, 204 F.3d at 69, n. 4.

The majority of the Circuits, including the Fourth Circuit, have held in the context of inmates' suits under § 1983 that the failure to exhaust administrative remedies is an affirmative defense under Rule 8(c)[4] of the Federal Rules of Civil Procedure like the defense of statute of limitations. Anderson, 407 F.3d at 681 ("In our view, the language and structure of the PLRA make it clear that an inmate is not required to allege exhaustion of remedies in his § 1983 prison-

---

[4] Listing certain traditionally recognized defenses, Rule 8(c) of the Federal Rules of Civil Procedure provides as follows:

> **Affirmative Defenses.** In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver and any other matter constituting an avoidance or affirmative defense.

conditions complaint. Instead, an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise raised by the defendant."); Jackson v. District of Columbia, 254 F.3d 262, 267 (D.C. Cir. 2001); Casanova v. Dubois, 304 F.3d 75, 77, fn. 3 (1st Cir. 2002); Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999); Jenkins v. Haubert 179 F.3d 19, (2d Cir. 1999); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002); Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998)(in dicta); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000); Massey v. Helman, 196 F.3d 727, 734-35 (7th Cir. 2000), cert. denied, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); Perez v. Wisconsin Dept. of Corr., 182 F.3d at 536; Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001); cf. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir 2000), cert. denied, 531 U.S. 1040, 121 S.Ct. 634, 148 L.Ed.2d 542 (2000)(An inmate must "plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome."). Likewise, with respect to Bivens actions, the Seventh Circuit Court of Appeals held in Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004), that "[a]lthough exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted). In the context of claims under the PLRA however, *sua sponte* dismissal by the District Court is appropriate when it is apparent from the face of the complaint that the inmate has not exhausted his administrative remedies. Anderson, 407 F.3d at 682.

> In the context of PLRA claims, then, we believe it is appropriate to recognize that district courts have the same authority to inquire into the applicability of an affirmative defense as in the habeas context. Such a conclusion gives some teeth to the PLRA's exhaustion requirement, yet does not do a disservice to the statutory language carefully chosen by Congress.
>
> Accordingly, we conclude that a district court may raise the issue of exhaustion of remedies on its own motion. Except in the rare case where failure to exhaust is apparent from the face of the complaint, however, a district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue.

Id. It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal for want of subject matter jurisdiction. See Neal v. Goord, 267 F.3d 116, 121-122 (2d Cir. 2001)(*overruled on other grounds*), a § 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal,

> allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset.

Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court.

Furthermore, available administrative remedies must be exhausted with respect to each claim against each Defendant or the Complaint must be dismissed under the "total exhaustion rule" found in § 1997e(a). *See* Quinones v. Rubenstein, Civil Action No. 5:02-1365, Document No. 51 (S.D.W.Va. Sept. 23, 2003)(C.J. Faber)(Applying a plain meaning reading to the phrase "no action"

as stated in § 1997e(a), Chief Judge Faber adopted the total exhaustion rule as applied to *habeas* actions filed pursuant to 28 U.S.C. § 2254, and applied it to §1983 and other similar actions.) (Id., p. 20 - 24.)

Proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted). The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment, other than appeals of disciplinary and confinement matters. (Document No. 23, Exhibit 4.) Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit Manager. The Unit Manager must respond to the inmate's Grievance within five business days. If the Unit Manager's response was unfavorable, the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. Should the Unit Manager fail to respond within the five day period of time, the inmate may immediately file a G-2 Grievance Form utilizing the G-1 Grievance Form copy. The Warden/Administrator must respond to the appeal, in writing, within five working days. If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. If the Warden/Administrator's response was unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. Furthermore, if the Warden/Administrator fails to respond within the five day period of time, the inmate may submit his appeal to the Commissioner/designee within five working days of the lapsed response time. The Commissioner

must respond to the appeal within ten working days. The administrative process is exhausted when the Commissioner responds to the inmate's final appeal.

Defendant relies upon Plaintiff's deposition testimony in asserting that Plaintiff did not fully exhaust administrative remedies. Defendant notes Plaintiff's assertion that he filed a G-2 grievance form in Defendant's office respecting the circumstances raised in Civil Action No. 5:05-0016 and Defendant did not respond. (Document No. 23, p. 2 - 3.) Defendant states that Plaintiff indicated in testifying at his deposition that he did not file a G-1 grievance form and did not file an appeal with the Commissioner. Defendant further notes Plaintiff's assertion that he filed a note in Defendant's office complaining of the circumstances raised in Civil Action No. 5:05-0131 and received no response. (Id., p. 3.) Defendant states that Plaintiff testified that he did not otherwise submit his claims through the West Virginia Division of Corrections' Policy Directive 335.00 grievance procedure. Additionally, Defendant points out that Plaintiff indicated in testifying that he did not submit his claims made in supplemental filings respecting the water quality at MOCC and the prison staff's interference with his access to the Courts through the grievance procedure. (Id., pp. 4 and 5.)

Plaintiff testified as follows respecting complaint he made administratively that he was required to reside with a mentally ill inmate (Document No. 23, Exhibit 1, pp. 17 - 19.):

> Q. Have you filed – how about filing a grievance, did you file a –
> A. Yes. I think I filed a grievance. It was a handwritten grievance. Right here it is (indicating). I put, to Warden Thomas McBride. I have a serious problem with my cellmate . . .. I put down [he] is seriously mentally ill as you or your staff should investigate his mental illness.
> Q. Let me just ask you –
> A. I filed this December 15, 2004 at MOCC.
> Q. Let me just ask you. That is a document you've got listed as Exhibit A?
> A. Yes.
> Q. That is in with what document?
> A. It's case number 05050131.
> Q. So that would be Exhibit A to that complaint?

> A. Yes.
> Q. That's a document that you filed directly to Warden McBride?
> A. Yes.
> Q. Did you file a G1 with anybody at your unit level?
> A. I had mentioned to Mr. Stone that this man was mentally unstable.
> Q. But in terms of filing a written document to anybody –
> A. No. I took it that Mr. Stone was going to act on this problem.
> Q. Did you get a response of an kind of – did you get any kind of response from Warden McBride on this document that you indicated that you sent to Warden McBride?
> A. They had said to file a G1, which I think I informed him, the warden, that I had talked to somebody. That would be Mr. Stone.
> Q. Other than this document that is attached as Exhibit A to this complaint form, did you tender any other written documents to anybody in relation to this double-celling issue?
> A. Just to the court and to the warden with that letter.
> Q. Did you ever send any letter to the commissioner?
> A. No, sir, not in my record.

Plaintiff testified similarly respecting his dental problems that, having notified the medical department, he sent a letter to Defendant's office thinking that it would constitute his submission of a G-1 grievance form. Apparently, he was advised that he should make his complaint on a proper form, a G-2 grievance form, and he did so. He testified that did not submit his complaints to the office of the Commissioner. (Id., pp. 25 - 28.) Plaintiff further testified that he did not file grievances about the shutting off of water to his cell and complained to Defendant respecting his problems with the law library staff but did not file a G-1 grievance form or submit a claim to the Commissioner. (Tr. at 34, 38 - 39.)

The undersigned finds from Plaintiff's testimony that Plaintiff clearly did not submit any of the claims which he raises in these two consolidated case through the West Virginia Division of Corrections' Policy Directive 335.00 grievance procedure. Plaintiff therefore failed to exhaust administrative remedies. For this reason, these matters must be dismissed.

Overlooking Plaintiff's failure to exhaust administrative remedies, the undersigned also finds that Defendant's claim that he cannot be held responsible under the doctrine of *respondeat superior* is meritorious. Liability under the doctrine of *respondeat superior* generally is inapplicable to actions arising under 42 U.S.C. § 1983. See Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982). Supervisory officials further may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991). The undersigned finds based upon a full examination of the record that Defendant received Plaintiff's complaints through his office and attempted to direct Plaintiff along the prescribed course for airing them. It is not evident at all that Defendant's conduct directly caused the circumstances about which Plaintiff complains or that Defendant was indifferent to or tacitly authorized the conduct of subordinates thereby precipitating them.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT**

Defendant's Motion for Summary Judgment (Document No. 22 in Civil Action 5:05-0016.) and **DISMISS** these matters and remove them from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Johnston and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner.

Date: August 21, 2005.

R. Clarke VanDervort
United States Magistrate Judge